In re Keith RICHARDS, K–Pat, Inc., a Minnesota Corporation, C.N.L., Inc., a Minnesota corporation, Debtors,

Michael J. IANNACONE,
Trustee, Plaintiff,

v.

CAPITAL CITY BANK, Oak Park Heights State Bank, Cosmopolitan State Bank of Stillwater, and Heritage National Bank, Defendants.

Bankruptcy Nos. 3–83–2087,
3–84–688 and 3–84–349.
Adv. No. 84–0277.

United States Bankruptcy Court,
D. Minnesota,
Third Division.

Feb. 3, 1986.

See also 43 B.R. 549, 43 B.R. 554.

Michael J. Iannacone, St. Paul, Minn., for plaintiff.

Richard Donohoo, St. Paul, Minn., for Capital City Bank.

Michael Fleming, White Bear Lake, Minn., for Heritage Nat'l Bank.

Robert Briggs, Stillwater, Minn., for Cosmopolitan State Bank.

## MEMORANDUM ORDER FOR JUDGMENT

DENNIS D. O'BRIEN, Bankruptcy Judge.

This adversary proceeding came on for trial on October 28, 1985, by complaint of Michael Iannacone, trustee, seeking to avoid certain transfers as fraudulent pursuant to 11 U.S.C. § 548 and seeking declaratory judgment of ownership, rights and priorities among the parties regarding a certain collection of artwork. The trustee appeared and represented himself; Defendants Capital City Bank and Oak Park Heights State Bank appeared by their attorney, Richard Donohoo; Defendant Cosmopolitan State Bank of Stillwater is represented in the proceedings by its attorney, Robert Briggs, but did not appear and was not represented at trial; and Defendant Heritage National Bank appeared by its attorney, Michael Fleming. Based upon

the testimony and documentary evidence received at trial, upon the arguments and briefs of counsel, and upon all of the records and files herein, and being fully advised in the matter, the Court now makes this Order pursuant to the Federal and Local Rules of Bankruptcy Procedure.

## I.

### FACTS

This litigation concerns a certain collection of artwork referred to by the parties as "The Bob Brown Collection". Michael Iannacone, trustee in these three bankruptcies, brought the action for judgment determining the rights of the parties in the artwork arising from a series of financial transactions crafted by Keith Richards and others.

Mr. Richards and his wife acquired the "The Bob Brown Collection" as an investment sometime prior to May 11, 1979. K–Pat, Inc., (K–Pat) is a corporation formed by the Richards on May 11, 1979, on advice of an accountant for the purpose of marketing the artwork and thereby realizing substantial tax savings to them. K–Pat did not receive title to "The Bob Brown Collection" until May 9, 1983, and was not, either before or after, an active corporation. It never filed any tax returns and the artwork was never marketed. The Richards are each 50 percent shareholders in K–Pat.

C.N.L., Inc., is a corporation organized by Mr. Richards in 1981 for the purpose of owning and operating a nightclub known as "The Hideaway". He is the corporation's sole shareholder.

Mr. Richards filed for relief under Title 11 U.S.C. Chapter 11 on December 18, 1983. The case was subsequently converted to Chapter 7 on April 12, 1984. Prior to the filing, he incurred substantial indebtedness, both directly and by guarantee, as a result of personal and corporate business ventures. The Defendants in this proceeding are among those who became creditors of Mr. Richards or C.N.L., Inc., and each Defendant was granted a security interest in "The Bob Brown Collection" at some stage of financial dealing.

On December 23, 1982, Mr. Richards executed a Note payable to Defendant Oak Park Heights State Bank (Oak Park) in the principal amount of $95,025.00. In that same month, C.N.L., Inc., executed a Note, guaranteed by Richards, payable to Defendant Capital City Bank (Capital) in the principal amount of $225,000.00. Both notes were unsecured and by the Spring of 1983, both were in default.

In March and April of 1983, Oak Park and Capital commenced discussions with Mr. Richards regarding the future of these loans. By April 18, as a result of several meetings wherein Mr. Richards' overall financial circumstances were reviewed and various alternatives discussed, the Banks demanded the securing of their positions or full payment on the obligations. The only viable unsecured asset available to secure the Banks was "The Bob Brown Collection". The parties apparently thought that the artwork had value in excess of $500,-000.00. However, its actual value did not likely exceed $150,000.00, which was substantially short of the combined obligations owing the two Banks.[1] Mr. Richards was insolvent at the time.

Based on prior financial statements issued by Mr. Richards and from the discussions that took place, Oak Park and Capital believed K–Pat to be the owner of the artwork. Accordingly, on April 20, 1983, the Banks obtained from K–Pat a security interest in the "The Bob Brown Collection" securing the debts owing by C.N.L., Inc., and Keith Richards.[2] Two days later, the Banks requested by letter that they be furnished evidence of ownership of the artwork in K–Pat.

In the meantime, on the same day that K–Pat granted Oak Park and Capital a

---

1. Oak Park was owed approximately $95,000.00 and Capital was owed approximately $208,-000.00.

2. K–Pat did not guarantee the debts or otherwise become obligated to pay them. It merely granted a security interest in the artwork.

security interest in "The Bob Brown Collection", C.N.L., Inc., by Keith Richards, its president, executed an agreement granting a security interest in the same artwork to Defendant Cosmopolitan State Bank of Stillwater securing a Note in the principal amount of $120,000.00. Later, Mr. Richards delivered to Oak Park and Capital a Bill of Sale, dated May 9, 1983, executed by Keith R. Richards and Patricia L. Richards, wherein they conveyed "The Bob Brown Collection" to K–Pat.

Still later, on August 17, 1983, Keith Richards executed an agreement in his individual capacity granting a security interest in "The Bob Brown Collection" to Defendant Heritage National Bank securing a personal Note in the principal amount of $200,-000.00. In all instances, the individual or entity granting the security interests represented and warranted title in the grantor, and financing statements were duly recorded with the Minnesota Secretary of State.

On February 27, 1984, C.N.L., Inc., filed for relief under Title 11, Chapter 11, and K–Pat similarly filed on April 12, 1984. Both cases were converted to Chapter 7 by Orders of the Court dated July 7, 1984, and May 17, 1984, respectively.

## II.

### PROCEDURAL HISTORY OF LITIGATION

The trustee commenced this action by complaint filed September 12, 1984. The

**3.** The correct jurisdictional citation apparently is 28 U.S.C. § 1334, since the jurisdictional provisions of the Bankruptcy Amendments and Federal Judgeship Act of 1984 relevant here became effective on July 10, 1984. Section 1334 replaced § 1471 under the 1984 Act.

**4.** The complaint also alleged that in March 1984, K–Pat transferred the artwork back to Keith Richards "for less than valuable consideration", a similarly claimed fraudulent transfer. In March 1984, K–Pat, by Patricia L. Richards, executed a Bill of Sale in favor of Keith Richards, along with an affidavit dated March 29, 1984, reciting that she did not personally have any interest in the artwork, and that she believed the original transfer to K–Pat was without adequate consideration. The trustee did not try the issue of fraudulent conveyance regarding

original pleading alleged jurisdiction pursuant to 28 U.S.C. § 1471 and 11 U.S.C. § 548.[3] The complaint focused on two areas relevant to the case actually tried.

One was the transfer by Keith Richards of his interest in "The Bob Brown Collection" to K–Pat. It was alleged that the transfer was made sometime prior to March 1984, "for less than valuable consideration"; that the transfer was fraudulent within the meaning of The Minnesota Fraudulent Conveyance Act, Minn.Stat. Ann. § 513.21, *et seq.;* and, accordingly, the transfer is avoidable by the trustee pursuant to 11 U.S.C. § 548.[4] The other area focused on by the complaint concerned the various security interests granted in the artwork (discussed *supra*) with a request for judgment determining ownership, rights and priorities of the parties.

Defendant Cosmopolitan State Bank filed its answer and participated in the initial pretrial proceedings. However, it did not appear by counsel at trial and filed no brief.[5] Defendant Heritage National Bank filed its answer, but entered into a stipulated settlement with the trustee prior to trial.[6] Heritage appeared at trial by counsel, but participated minimally. Counsel did file a brief in support of the trustee's action. Defendants Oak Park and Capital filed their joint answer, appeared at trial, and vigorously defended against the action.

Most of the testimony and documentary evidence received at trial centered upon

the March 1984, transfer by K–Pat of the artwork back to Richards and determination of the issue would not alter the result in the case as tried. ·

**5.** Cosmopolitan's interest in the artwork is premised upon ownership of "The Bob Brown Collection" by C.N.L., Inc., since that was the entity granting Cosmopolitan its security interest. No evidence was offered at trial that C.N.L., Inc., ever owned the artwork and substantial evidence was received that it never owned it.

**6.** The details of the settlement were not disclosed to the Court at trial and no written stipulation was filed. However, it is the Court's understanding that the terms of the settlement depend upon resolution of the issues tried.

ownership of "The Bob Brown Collection" prior to May 9, 1983; circumstances surrounding its transfer to K–Pat by Bill of Sale on May 9; circumstances surrounding the granting of a security interest by K–Pat to Oak Park and Capital on April 20, 1983; and the question of solvency of both Keith Richards and K–Pat at the time and as a result of the transfers.

At conclusion of the trial and after both sides had rested, the trustee orally moved to amend his complaint in three material respects to conform with the evidence.[7] The amended complaint would add Counts V, VI and VII.

Count V alleges that the transfer of Keith Richards' interest in "The Bob Brown Collection" was made by him on May 9, 1983, for less than reasonably equivalent value and under financial circumstances that render the transaction avoidable under 11 U.S.C. § 548. Fixing the date of the transfer at May 9, 1983, brings it within one year of the filing of the petition and obviates reference to Minn. Stat.Ann. § 513.21, et seq., in the original complaint. The trustee made no argument in his post-trial brief of fraudulent conveyance under the state statute.

Count VI alleges that the granting of a security interest by K–Pat to Oak Park and Capital constituted a transfer on May 9, 1983, (the date K–Pat acquired rights in the artwork by Bill of Sale from the Richards), for less than reasonably equivalent value and under financial circumstances that render the transaction avoidable under 11 U.S.C. § 548.

Count VII alleges that the Oak Park and Capital security interest was taken in consumer goods; that the Security Agreement did not grant a security interest in after-acquired property; that no value was given by Oak Park and Capital to K–Pat; that K–Pat did not obtain an interest or have rights in the artwork until May 9, 1983;

and, accordingly, the security interest in the consumer goods did not attach pursuant to Minn.Stat.Ann. § 336.9–204(2).

The motion to amend was taken under advisement pending receipt of briefs.

## III.

### DISCUSSION AND DISPOSITION

**Motion To Amend**

Plaintiff's motion to amend his complaint by adding Counts V and VI should be granted. Count V merely focuses the Keith Richards' conveyance to K–Pat directly and exclusively on 11 U.S.C. § 548. The amendment is consistent with Plaintiff's original theory of the case and does not introduce materially new or different elements of proof. Defendants were aware prior to and during the trial that Plaintiff was relying on May 9, 1983, as the date of transfer and the issue was joined and litigated by consent. Application of § 548 to the transaction was discussed extensively by counsel and the Court both before and during the trial.

Count VI is somewhat more troublesome. The original complaint asserted no cause of action on behalf of K–Pat against Oak Park and Capital claiming that the security interest granted those Defendants by K–Pat was a fraudulent conveyance. Nevertheless, Plaintiff disclosed the theory and made the claim during several conferences involving the parties and the Court, both before and during the trial. While Plaintiff should have moved to amend his complaint to assert this cause of action prior to commencement of trial, failure to do so in this case did not prejudice the Defendants. All parties were aware that the transaction was disputed on the theory of § 548 Fraudulent Conveyance and the issue was joined and tried by consent.[8] Furthermore, there

---

7. The trustee initially sought to amend in a fourth material respect by alleging a cause of action against Oak Park and Capital for equitable subordination, but withdrew the motion during oral argument.

8. Oak Park and Capital did, on several occasions, raise the question of conflict of interest resulting from the trustee representing both the Richards and K–Pat estates in this litigation. However, they did not object to litigating the issue of fraudulent conveyance as applied to the

appears to be no material dispute of facts relevant to determination of the substantive issues; its resolution is largely a question of law; and no useful purpose would be served by its further litigation.

Count VII should not be allowed. Neither validity nor perfection of Oak Park's and Capital's security interest was challenged by Plaintiff before or during trial by pleading or otherwise.[9] Furthermore, the trustee offered no testimony or other evidence on the issue. While the Security Agreement upon which Count VII is based was placed in evidence, it was one of numerous documents introduced in focus on the issues actually tried as related in Part II, *supra*. If the allegation in Count VII ever presented a serious issue in the case, it was a classic "sleeper" and was never joined against Oak Park and Capital by consent or otherwise. To allow the amendment now would result in trial by ambush.[10]

Based on the foregoing reasons, Plaintiff's motion to amend his complaint by adding Counts V and VI is granted. His motion to amend by adding Count VII is denied. Two issues, then, must yet be determined. One is whether the conveyance by Keith Richards of his interest in "The Bob Brown Collection" by Bill of Sale to K–Pat, on May 9, 1983, was a fraudulent conveyance avoidable by the trustee under 11 U.S.C. § 548. The other is whether the attachment of Oak Park's and Capital's security interest to the artwork on the same date (by operation of a security interest granted by K–Pat on April 20, 1983) was a similarly avoidable transfer. The Court concludes that neither transaction was a transfer avoidable under § 548.

### Keith Richards Conveyance to K–Pat

■ The trustee argues that Mr. Richards received nothing of value for his transfer of the artwork to K–Pat since he received no monetary consideration, and the value of his 50-percent shareholder interest in K–Pat remained unchanged due to the encumbrance by K–Pat to Oak Park and Capital.

It is helpful to begin analysis under § 548[11] of the Keith Richards transfer to K–Pat by recognizing that "value" as used in that section includes the securing of an antecedent debt of the Debtor. *See* 11 U.S.C. § 548(d)(2)(A). Clearly, had Mr. Richards, in his individual capacity, granted Oak Park and Capital a security interest in "The Bob Brown Collection", the transaction would not be avoidable under § 548.

By transferring his interest in the artwork to K–Pat, which, in turn, granted the

granting of the security interest by K–Pat until after the trial was over and the motion to amend was made.

9. In its eight-page answer to the original complaint, Defendant Heritage National Bank did plead essentially the same allegation that the trustee now alleges in Count VII. However, Heritage pleaded the allegation as an affirmative defense, not as a cross-claim against Oak Park and Capital. Heritage and Plaintiff settled their dispute prior to trial and, although Heritage did participate minimally in the trial, it offered no testimony or other evidence to support the claim. Under the circumstances of the case, the Heritage pleading did not present fair notice to Oak Park and Capital that the issue was joined for trial.

10. Aside from the procedural deficiencies in the way the issue has been raised, there are substantial questions whether K–Pat is a proper debtor and, if not, whether its trustee has standing to pursue such an action. *See* Footnote 14, *infra*. Furthermore, the Security Agreement, itself, is inconclusive on the merits of the allegations.

The document used was a standard form. Plaintiff claims that the security interest taken by Oak Park and Capital in the artwork was a security interest in consumer goods. The theory is premised on identification in the document consisting of an "x" having been typed among printed language reading: "Used primarily for personal, family or household purposes." K–Pat is a corporation organized under and in accordance with the provisions of the Minnesota Business Corporation Act, Minn.Stat. Ann. § 301, *et seq.*

11. 11 U.S.C. § 548(a)(2)(A) reads:
(a) The trustee may avoid any transfer of an interest of the debtor in property, or any obligation incurred by the debtor, that was made or incurred on or within one year before the date of the filing of the petition, if the debtor voluntarily or involuntarily—...
(2)(A) received less than a reasonably equivalent value in exchange for such transfer or obligation;

security interest to Oak Park and Capital, Richards received the same value he would have received had he granted the security interest directly—*i.e.*, the securing of antecedent indebtedness. The fact that this "value" was received by way of K–Pat's encumbering the property to Oak Park and Capital did not alter what it was that Richards received.

The crucial question then is not whether Richards received something of value, but whether he received the reasonably equivalent value in exchange for what he transferred. This is not a situation where a debtor has merely transferred an interest in property to a creditor as security for an antecedent debt. Here, the Debtor transferred his entire interest in property, legal and equitable, to a third party who was not a creditor of the Debtor. Nevertheless, the value of what was transferred did not exceed the value of what was received.

The value of Richards' undivided one-half interest in the artwork was $75,000.00 and that amount constitutes the value of what he transferred. The value of the resulting collateralization against his personal indebtedness was $150,000.00. Furthermore, since K–Pat had no debts and Keith Richards owned 50 percent of all outstanding shares in the corporation, transfer of his title in "The Bob Brown Collection" did not impair his interest in it to any greater degree than if he had granted a security interest directly to Oak Park and Capital instead.[12] The value of his stock was subject to increase directly proportionate to one-half the equity that might be realized in the artwork by K–Pat due to paydown by Richards on the Oak Park and Capital indebtedness.

Based upon the foregoing, the transfer by Keith Richards of an undivided one-half interest in "The Bob Brown Collection" on May 9, 1983, to K–Pat, was not a fraudulent conveyance avoidable by the trustee pursuant to 11 U.S.C. § 548.

### K–Pat's Security Interest to Oak Park and Capital

█ Analysis under § 548 of the K–Pat transfer to Oak Park and Capital requires a different focus, but the same result. Neither the granting nor attaching of the security interest constituted an avoidable transfer under the statute.

Clearly, K–Pat received nothing of cognizable value in exchange for the transfer. The artwork had a value of $150,000.00. Accordingly, the requisites of 11 U.S.C. § 548(a)(2)(A) have been met by Plaintiff. However, neither the "insolvency" nor "diminished capital" requisites of § 548(a)(2)(B) have been met.[13]

Insolvency is defined, in part, to include a financial condition such that the sum of an entity's debts is greater than all of its property. *See* 11 U.S.C. § 101(29). Debt is defined as liability on a claim (*See* 11 U.S.C. § 101(11)); and claim is defined as a right to payment or right to an equitable remedy for breach of performance (*See* 11 U.S.C. § 101(4)).

Oak Park and Capital were creditors of K–Pat at the time of filing the petition only to the extent that their claims were against the Debtor's property. *See* 11 U.S.C. § 102(2) and 11 U.S.C. § 101(9). K–Pat never had *liability* on those claims. Furthermore, K–Pat never had any other creditors or claims against it or against its prop-

---

12. Even if Keith Richards' interest in the artwork had exceeded the value of the combined indebtedness of Oak Park and Capital at the time of the transfer, the conveyance would not have been avoidable under § 548. In that instance, Richards would have received value both by way of collateralization of personal *indebtedness and increase in value of his K–Pat shares. K–Pat had no debts.

13. 11 U.S.C. § 548(a)(2)(B) requires that at the time of an alleged avoidable transfer, a debtor:

(B)(i) was insolvent on the date that such transfer was made or such obligation was incurred, or became insolvent as a result of such transfer or obligation;
(ii) was engaged in business or a transaction, or was about to engage in business or a transaction, for which any property remaining with the debtor was an unreasonably small capital; or
(iii) intended to incur, or believed that the debtor would incur, debts that would be beyond the debtor's ability to pay as such debts matured.

erty. K–Pat simply never had any debts either before or after the transfer complained of.[14] Accordingly, the Debtor was not insolvent at the time it granted the Oak Park and Capital security interest or at the time that the interest attached in the artwork; nor was K–Pat rendered insolvent as a result of the transaction.

Finally, there was offered no significant evidence in this case that K–Pat was, or was about to be, engaged in business for which it needed any capital. The corporation was, at all times prior to the filing of the petition, inactive except for its acquisition of title to "The Bob Brown Collection" to facilitate securing it to Oak Park and Capital. There was no evidence of any intent by the Debtor to incur debts beyond its ability to pay them as they might mature, and the schedules filed with the petition show that, in fact, it did not incur such debt or any debt.

## IV.

### CONCLUSION

Having carefully considered the matter, and based on the foregoing analysis, the Court is of the opinion that 11 U.S.C. § 548 was not intended to apply to a scenario such as the one involved in this dispute. The granting of a security interest by a debtor securing an antecedent debt does not, by itself, constitute an avoidable transfer under that section. In reality, that is what was intended and accomplished by the parties in substance, if not form, by these disputed transactions. It would be unfair and inequitable, in this Court's opinion, to apply § 548 to nullify transfer of either the Keith Richards conveyance to K–Pat or the K–Pat security interest to Oak Park and Capital.

Clearly, Richards received reasonably equivalent value for his interest transferred by way of collateralization of antecedent indebtedness. Even though he transferred title of "The Bob Brown Collection" to K–Pat, his real interest in the property was unaffected by that transfer due to his shareholder interest in the debt-free inactive corporation. The only real impairment to the property was its collateralization against his personal antecedent indebtedness, a circumstance which, standing alone, does not constitute a fraudulent conveyance.

Nullifying the K–Pat transfer of security interest would serve no legitimate purpose under § 548. Since K–Pat has no debts, is inactive and in Chapter 7, the only resulting beneficiaries would be its shareholders. One of those is Patricia L. Richards, who is not a debtor. The other is the trustee of Keith Richards' estate who is now the owner of that Debtor's shares. Avoidance would not benefit the K–Pat estate. Under the circumstances, it would be inappropriate to allow the trustee of the K–Pat estate to use his avoiding powers solely to benefit the interests of its shareholders.

**ACCORDINGLY, IT IS HEREBY ORDERED:**

1. Defendant Cosmopolitan State Bank of Stillwater has no interest in the artwork known as "The Bob Brown Collection" which is the subject of this proceeding and which is more particularly described in Exhibit "A" attached to this Order;

2. The transfer of "The Bob Brown Collection" by Keith Richards to K–Pat, by Bill of Sale dated May 9, 1983, was not a fraudulent conveyance avoidable by the trustee of the Keith Richards estate pursuant to 11 U.S.C. § 548;

**14.** K–Pat had no equitable interest in property either, except for the $1,000.00 capital paid-in upon its incorporation. Since the corporation encumbered the artwork substantially beyond its value before acquiring any rights in the property, it took bare legal title only, on May 9, 1983, through the Richards' Bill of Sale. The lack of equity in property and absence of debt is not only significant on the § 548 solvency issue, but is significant in considering whether K–Pat is a proper Chapter 7 debtor. At the time of conversion, K–Pat had no valuable interest in property and no debts. See 11 U.S.C. § 541(d). Furthermore, assuming that K–Pat's March 1984, pre-petition conveyance of the artwork back to Keith Richards was valid, it did not even have bare legal title.

3. The transfer by K–Pat, through the granting of a security interest in "The Bob Brown Collection" to Defendants Capital City Bank and Oak Park Heights State Bank by Security Agreement dated May 20, 1983, and its attachment on May 9, 1983, was not a fraudulent conveyance avoidable by the trustee of K–Pat's estate pursuant to 11 U.S.C. § 548;

4. Defendants Oak Park Heights State Bank and Capital City Bank are entitled to their costs and disbursements herein as provided by law.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

EXHIBIT A

BOB BROWN ART WORK

WATER COLORS

| Description | Size |
| --- | --- |
| Second Story | 12×9¼″ |
| Windmill | 12×10″ |
| Sketch for Afton Farm | 11½×9½″ |
| Hudson | 13×9½″ |
| Minneapolis Gas Works | 13×9½″ |
| Farm Grainery | 11×8½″ |
| Stillwater By the River | 12×9½″ |
| Train on Trestle | 12×9¾″ |
| Study: "Rocks under of R" | 12×9¾″ S.P. |
| Barn Yard | 11½×9½″ |
| House Ruins #2 La Jolla | 11¾×9¾″ |
| Notan's Corners | 12×9½″ |
| Pasture | 12×9½″ |
| Red Bush | 12×8¾″ S.P. |
| "Every Cat Has Its Sack" | 11×8½″ |
| Cave of the Cock Fights | 12×9½″ |
| Minneapolis at East Hennepin | 12×10″ |
| Cherokee Heights | 14×10″ |
| The Well | 12×10″ |
| Railroad Yard | 12¼×9¼″ |
| Stream | 11×8½″ |
| Countryside | 11½×8½″ |
| Schoolhouse—Stillwater | 13¾×10″ |
| Lakeland | 11¾×8¾″ |
| Gas Pump | 11×8″ |
| Mushroom Stack | 11×9″ |
| Country Store | 12×9″ |
| House—Mississippi Road | 12×9½″ |
| Schnoggel in Cross Country | 11½×9″ |
| Barn Yard #2 | 12×9″ |
| Farm Field | 11½×8½″ |
| Back Yard | 11¾×8½″ |
| Chained Man | 11¾×9″ |
| Rock Hill | 11¾×9″ |
| Mushroom Cove | 11½×9″ |
| Steam Shovel | 12×8½″ |
| California | 11½×8½″ |
| Trains (City Train) | 11¾×8¾″ |

| Description | Size |
| --- | --- |
| Tug Boat | 11½×8½″ |
| Houses | 11½×9½″ |
| Demented Myson | 11¾×8¾″ |
| River | 11½×8½″ |
| Old Trees | 12×9″ |
| Lakeland | 12×9″ |
| House Frame | 11½×8½″ |
| Picket Fence | 12×9½″ |
| Behind the Scenes | 11×9″ |
| The Silo | 13½×10½″ |
| Weather Vane | 14×9½″ |
| Downtown St. Paul | 16½×11″ |
| House Ruins #2 La Jolla | 13¼×9¾″ |
| Mine Shaft | 13×9½″ |
| Bridge and Island | 12×8½″ |
| Farm on Hill | 12½×7½″ |
| Scandia | 13¾×9″ |
| (Ink)    Manufacturing Plant (Time Stood Still) | 11½×8½″ |
| Nude: Bizarre Wonderment #2 | 11×8½″ |
| Lakeland Country | 14½×9½″ |
| Taylors Falls—1941 (Rock) | 14×10″ S.P. |
| Hi Bridge below Hennepin, Minneapolis, 1947 | 14×10″ S.P. |
| Pliam's Golden Heel—Lakeland | 14×10″ S.P. |
| King This Babylon | 14×10″ |
| Stillwater 9–17–41 | 14×10″ S.P. |
| Stream 9–7–41 | 14×10″ S.P. |
| Behind Capitol | 13×9¾″ |
| Wheatfield | 15×10″ |
| Factory | 12½×10½″ |
| Tractor | 14×10″ |
| St. Paul Landscape | 14×10″ |
| Brown's Creek—Stillwater 8–2–41 | 14×10″ S.P. |
| Trip to Glena Mexico | 14×10″ |
| Taylors Falls 950 | 14×10″ |
| Prior Lake 7/47 Bushwack Area | 14×10″ |
| Brick Yard | 14×9½″ |
| Chaos Plus—New Prague 12/47 | 14×9½″ |
| Sow the Seed and Reap the Wind | 12½×10½″ |
| Bizarre Wonderment #1 | 11½×10″ |
| Round House—Mississippi Street—7–26–47 | 14×10″ S.P. |
| 271 W. 5th St. (South Robert & Mendota) | 14×9½″ |
| Little House In The Woods | 14½×10½″ |
| Landscape | 13½×10″ |
| Stormy Sky | 14×10″ |
| Beer Barrels | 14×11½″ |
| Valley Creek 7–25–47 | 14×10″ S.P. |
| Chanhassen In Fog 9–31–41 | 14×10″ |

| Description | Size |
| --- | --- |
| Hills and Trees Hudson 7–42 | 14×10″ |
| Plants and Locomotive 9–43 | 14×10″ |
| The Diggers | 14×10″ |
| Grain Shaft | 12½×9½″ |
| Scandia, Rain 7–14–41 | 14×10″ |
| Farm Yard 9/8/50 Lester Hudson | 14×10″ |
| Frontenac 8–2–46 | 14×10″ |
| St. Croix Valley | 19½×13″ |
| Winding Road, St. Croix Valley | 20×13½″ |
| White Horse | 17½×14″ |
| Bayou Upper Mississippi | 19×13″ |
| Telephone Poles | 16½×12″ |
| MA 0714 (Riverfront #2) | 14×12″ |
| Rock Hill #2 | 18½×14″ |
| Autumn | 19×14″ |
| Wheelbarrow | 17×14″ |
| Park Bench | 17×12″ |
| The Storm | 22×14½″ |
| Machine Shed | 20×12″ |
| Engine | 20×24″ |
| Sleepy Fish | 14¼×10¾″ |
| Sleepy Mts. | 19×14″ |
| Across from Fort | 21×15″ |
| Rudy Stipes | 14×20″ |
| Washington Foundry #1 | 25½×18″ |
| Washington Foundry #2 | 25×19″ |
| High Bridge | 21×15″ |
| Depot | 19½×12″ |
| Evergreen | 19×13½″ |
| Hidden Knowledge | 14×10″ |
| No Name (Stockyards?) | 15½×12″ |
| Study for _____ (High Bridge Road) | 12×9½″ |
| Night Light | 9×6″ |
| Fat Lady | 11×9¼″ |
| Color Landscape | 8×7″ |
| Horse | 8×6″ |
| Hill Scene | 7×5″ |
| Dead Branch | 8×6″ |
| Houses | 7×5″ |
| Hillside of People | 8×5½″ |
| Only Cloud Afloat | 8¾×6″ |
| Colored Landscape #2 | 10×7″ S.P. |
| House on Hill | 9×6″ |
| Out House | 8×6″ |
| Death Train | 9×5½″ S.P. |
| Man and Child | 11×9″ |
| Factory | 6×8½″ |
| Bridge | 10½×8″ |

| Description | Size |
| --- | --- |
| Sno Scene | 8½×12½″ |
| Tree on Top of Hill | 5½×6½″ |
| Soda and Nemisca | 5×7½″ |
| Abstract Countryside | 8×11″ |
| Tugboat | 8½×12½″ |
| Roof Tops in Mexico | 12½×8½″ |
| Revell in Junkyard | 8½×12″ |
| Cats Attention | 8½×11½″ |
| California Building Sides | 11×15½″ |
| Renegades Purged | 12×12″ |
| Minnesota River Bottoms | 9½×13½″ |
| Rock Falls | 10½×14½″ |
| Building Vertical | 10×14″ |
| Jersey Maid (Elf Woman) | 8×10″ |
| Cows on Hill | 9×13″ |
| Cows on Hill Final | 13½×15″ |
| City Street Scene Study | 11½×17″ |
| La Jolla—Flameyland | 16×20″ |
| Abstract Nude | 14×18″ |
| Stuffed | 15×21″ |
| Snow Covered Roof Tops | 11×16″ |
| House of Little Kernel | 21½×19″ |
| Golden Egg | 13×14″ |
| Filthy McNasty | 16×22″ |
| Collective Series #1 | 10×14″ |
| (Water Color with Crayon and Ink) | |
| Man Lying Down (Resting) | 8½×5½″ |
| House | 9×6″ |
| Men Rolling Stone | 8½×6″ |
| Lovers—Paris | 13×17″ |

## DRAWINGS

| Description | Size |
| --- | --- |
| (Pen) Building | 3½×6″ |
| Lakeland Farm | 17×6″ |
| (Drawing) Lake City 939 | 7×6″ |
| 2 Old Men | 7×5″ |
| Small Farm | 7×6″ |
| Men at Bar #2 | 7×5½″ |
| Men at Bar #1 | 6½×5″ |
| Lake City | 7×5½″ |
| Hunk Tar | 7×5½″ |
| Red Wing 9–2–39 | 7×6″ |
| Zoss (Two Face) | 7×5½″ |
| Lake City 939 | 7×5½″ |
| Stove | 7×5″ |
| Chicken (Eggs) | 7×5″ |
| Bull | 6×5″ |

**244**

| Description | Size |
| --- | --- |
| Factory on Hill | 4½×7″ |
| St. Paul | 5×7″ |
| Nude Lady | 6×7½″ |
| Man Reading | 6×7½″ |
| Roof Top | 8×7¼″ |
| Factory and Fireplug | 9×6″ |
| Tree | 5×7″ |
| Statues | 9×6″ |
| Man In Forest | 7×5¼″ |
| La Jolla | 9×7″ |
| Whangdooin Gray Cloud | 9×7″ |
| Illustration #1 | 6½×7″ |
| Old Town | 8×9″ |
| Downtown (study) | 8×8″ |
| Small Town | 9×8″ |
| Village (city) | 9×7″ |
| Tug Boat | 10×8″ |
| Stillwater | 9×8″ |
| Factory and Train | 9½×6½″ |
| Men Fighting (last round) | 9×6″ S.P. |
| Minneapolis/St. Paul area | 10½×7½″ |
| Barn | 11×8″ |
| Little Church | 12×9″ |
| Locomotive | 12×9″ |
| Old Depot | 12×9″ |
| Old Mansion | 12×9″ |
| Haystack | 18×11″ |
| Elephant | 13×11″ |
| Windmill | 13×10″ |
| Shacks | 13×11″ |
| Grain Mill | 13×10″ |
| (Pen) Railroad Track | 13×10″ |
| (Pen) Ruins | 13×10″ |
| The Rest Is Silence | 13×10″ |
| Hillside Village—Stillwater | 13×10″ |
| (Pen) Roof Tops | 13×11″ |
| Shack (study) | 13×7″ |
| Minneapolis/St. Paul area | 12×9″ |
| Working on the Mississippi | 12×9″ |
| Loading Grain | 12×9″ |
| Stillwater | 12×9″ |
| Country Church | 11×9″ |
| Town | 12×10″ |
| La Jolla | 12×9″ |
| Study—The House | 12×9″ |
| Railroad Yard | 11×9″ |
| House on the Hill—study | 10×8″ |

| Description | Size |
|---|---|
| Landscape | 12×9″ |
| River Front | 12×9″ |
| House from Back | 11×9″ |
| Road—study | 11×8″ |
| (Pen) Corpse | 13×10″ |
| Four Pieces—Sketch Book | 12×9″ |
| New Bridge | 12×9″ |
| (Charcoal) Coal | 13×10″ |
| Grain Elevator | 15×10″ |
| Crooked Tree | 16×11″ |
| Roof Tops | 15×17″ |
| Circus Study | 19×15″ |
| La Jolla | 9×11″ |
| The Wood | 9×10″ |
| (Ink) Illustration #2 | 10×12″ |
| Bob Brown's Rocking Chair | 9×13″ |
| Building Sides | 8×10″ |
| Man's Back (Mischievous child) | 9×12″ |
| (Ink) Mistaken Identity (Faces of Death) | 9×11″ |
| (Double) Two Nudes | 5×6″ each |
| Study—Factory On The Hill | 9×11″ |
| La Jolla—study | 5×10″ |
| Study—Farm | 8×9″ |
| Tower on the Hill (La Jolla) | 8×10″ |
| Farmer | 9×11″ |
| Woman #2 | 10×18″ |
| Woman #1 | 10×18″ |
| Woman with Jug | 11×22″ |
| (Regal) Woman's side | 10×22″ |
| Self Portrait—Nude | 10×23″ |
| Self Portrait—Nude | 9×24″ |
| Self Portrait—Nude | 10×23″ |
| WATER COLOR—Mushroom Hull | 14×11″ |
| ″ ″ Hillside | 14×11″ |
| ″ ″ Nude Study | 23×19″ |
| ″ ″ Tractor | 23×19″ |
| Drawing—Color—Nude Woman | 17×15″ |

### OIL PAINTINGS

| Description | Size |
|---|---|
| Haystack | 23×17″ |
| High Bridge | 18×24″ |
| Woman—Apples | 18×22″ |
| Nude/Woman | 18×25″ |
| Blue Spruce | 24×21″ |
| Broken Step | 24×20″ |
| Seeing Horses | 18×17″ |
| Valley | 16×20″ |

| Description | Size |
| --- | --- |
| Vegetables | 14×14″ |
| Self Portrait | 12×16″ |
| Tryptych Castle | 12×16″ |
| Nude | 12×22″ |
| Dock Door La Jolla | 11×9½″ |
| La Jolla—Hut | 10×9¼″ |
| La Jolla | 10×9″ |
| Abstract | 9¾×8″ |
| La Jolla | 14¼×12″ |
| In the Park | 9×12¾″ |
| Round Roof Tops | 11×9″ |
| Rocks | 10×12″ |
| Rolling Hills | 13×10″ |
| Street Light | 12×10″ |
| Windswept Tree—La Jolla | 12×11½″ |
| Lighthouse | 14½×10¾″ |
| Nude | 11×15″ |
| Stream | 12×10″ |
| Woods | 14½×11½″ |
| La Jolla | 16×12½″ |
| La Jolla | 12×12″ |
| The Glory of Home | 12×9½″ |
| Serene (Paris) | 8×10″ |
| Pallette | 12×9¼″ |
| Cliff | 8½×9″ |
| Abstract | 8×6″ |