**In re Pete G. VESCOVO, Debtor.**

**Pete G. VESCOVO, Plaintiff,**

**v.**

**FIRST STATE BANK and John Dickson, Travis County District Clerk, Defendants.**

**Bankruptcy No. 89–13714–FM.**
**Adv. No. 90–1026–FM.**

United States Bankruptcy Court,
W.D. Texas,
Austin Division.

Nov. 8, 1990.

H. Frank Harren, III, Strasburger & Price, Armbrust & Brown, Austin, Tex., for defendant.

Gray Jolink, Law Offices of Gray Jolink, Austin, Tex., for debtor/plaintiff.

## MEMORANDUM OPINION

FRANK R. MONROE, Bankruptcy Judge.

The above referenced adversary proceeding was tried before this Court on July 19, 1990. Briefs requested by the Court from the parties were filed on October 15, 1990. Upon consideration of the evidence adduced at the trial, the pleadings of the parties, the briefs of the parties, the argument of counsel, and the Court's own independent research, the Court is of the opinion that judgment should be rendered in favor of the Defendant First State Bank, and in support thereof the Court makes the Findings of Fact and Conclusions of Law as contained hereinafter in this Memorandum Opinion.

### Findings of Fact

1. A judgment in favor of Bank against Vescovo in the amount of $203,361.03 was signed on January 6, 1989 in *First National Bank, Austin v. Steve Dillard and Pete Vescovo*, in Cause No. 425,152 then pending in the 98th Judicial District Court of Travis County, Texas (the "State Court Litigation"). Vescovo was awarded a judg-ment therein against Bank in the amount of $37,000.00.

2. On February 7, 1989, Vescovo deposited with John Dixon, District Clerk for Travis County, Texas, the sum of $242,-000.00 in cash ("Cash Deposit") to obtain a Writ of Supersedeas on the Judgment.

3. On October 31, 1989, Vescovo filed a petition under Chapter 11 in this Court.

4. The Cash Deposit has accrued interest.

5. John Dixon holds the Cash Deposit pursuant to the Rules of Civil Procedure of the State of Texas and does not claim an interest in and to the Cash Deposit for himself.

6. The State Court Litigation has been completed by the Texas Supreme Court's denial of Vescovo's Application for Writ of Error. The judgment is, therefore, final.

### Issues

1. *Status of Dixon.* Is he a custodian as defined by 11 U.S.C. § 101(10) and therefore subject to the turnover provisions of 11 U.S.C. § 543? Is he an entity other than a custodian holding property of the estate that the trustee may use, sell, or lease under § 363 such that he may be required to turn it over under 11 U.S.C. § 542? What exactly is his role?

2. *Nature of Defendant's Interest.* Did a fraudulent transfer occur when the Cash Deposit was deposited with John Dixon, District Clerk by Plaintiff on February 7, 1989; or did such transaction simply provide the Defendant with security for its debt?

### Discussion and Conclusions of Law

1. *What is Dixon?* 11 U.S.C. § 101(10) defines "custodian" as

"(A) receiver or trustee of any of the property of the debtor appointed in a case or proceeding not under this title;

(B) assignee under a general assignment for the benefit of debtor's creditors; or

(C) trustee, receiver, or agent under applicable law, or under a contract, that is appointed or authorized to take charge of

property of the debtor for the purpose of enforcing a lien against such property, or for the purpose of general administration of such property for the benefit of the debtor's creditors;".

11 U.S.C. § 101(10). Clearly, subparts (A) and (B) do not apply to this situation. Subpart (C) may apply if Mr. Dixon is an "agent under applicable law, ... that is appointed or authorized to take charge of property of the debtor for the purpose of enforcing a lien against such property, ...". Id. If he is, then, as a custodian, he could be required to turn over the Cash Deposit to the trustee, or in this case, to the Plaintiff as debtor-in-possession, pursuant to 11 U.S.C. § 543. The question then to decide would be to determine the interest of the Defendant in the Cash Deposit and whether the turnover would be subject to or free of that interest. If he is not a custodian, but something else, and is holding property of the estate that the trustee, or here the debtor-in-possession, could use, sell or lease under § 363, then he could also be required to turn over the Cash Deposit under his control to the debtor-in-possession. The same question with regard to the Defendant's interest in the Cash Deposit would still have to be answered.

If Dixon is a bailee, the Cash Deposit could clearly be interpled or turned over to the debtor-in-possession in such a manner so as to preserve the rights of the parties with claims thereto in front of this Court.

■ The Court concludes that Dixon is a custodian within the meaning of 11 U.S.C. § 101(10)(C). This is consistent with the legislative history which states that a custodian is a "prepetition liquidator of the debtor's property, such as an assignee for the benefit of creditors, a receiver of the debtor's property, or a liquidator or administrator of the debtor's property. H.R.Rep. No. 595, 95th Cong., 1st Sess. 310 (1977); S.Rep. No. 989, 95th Cong., 2nd Sess. 21 (1978), U.S.Code Cong. & Admin.News 1978, pp. 5787, 5807, 6267. "The definition also includes an agent of a secured creditor who takes possession of property for purposes of lien foreclosure, e.g. a mortgage foreclosure." 4 *Collier on Bankruptcy,*

paragraph 545.04 at p. 545–16 (15th ed.). Dixon took possession of the Cash Deposit to "secure" payment of the judgment to the Defendant if Vescovo's appeal was unsuccessful. See discussion of Nature of Defendant's Interest hereinafter. The act of payment (of cash) by Dixon upon the judgment becoming final is very similar to the act of conveyance after foreclosure (of realty) by a trustee under a deed of trust. Broadly interpreted, Dixon is a custodian.

■ Even if not a custodian, Dixon qualifies as an entity "in possession, custody and control, during the case, of property that the trustee may use, sell or lease under section 363...." 11 U.S.C. § 542(a). As a bailee he could also be compelled to turn over the Cash Deposit under § 542.

However, the resolution of the case at bar is not found solely in who or what Mr. Dixon is, but through a determination of the nature of the interest of the Defendant in the Cash Deposit held by Dixon; for regardless of Mr. Dixon's status, as of the petition date the Defendant had an interest in the Cash Deposit, and any turnover to the Debtor would, of necessity, be subject to that interest unless it is avoidable. Therefore, we must define that interest. To find the answer we must look both to state law and to bankruptcy law.

■ 2. *Nature of Defendant's Interest.* The Cash Deposit is property of the estate. See 11 U.S.C. § 541. It is owned by the Debtor. By placing the Cash Deposit with Dixon the Debtor did not revoke and give up his ownership of it. Quite the contrary, he put it there so he could prosecute, and hopefully win, his appeal. If he had won, he would have been entitled to get the cash back. This Court cannot rationally determine otherwise. The Cash Deposit is, however, subject to the claim of First State Bank.

■ Rule 48 of the Texas Rules of Appellate Procedure was adopted effective September 1, 1986. It provides that a judgment can be superseded by a deposit of cash in lieu of a good and sufficient bond provided that the deposit of the cash is conditioned in the same manner as would

be a surety bond "for the protection of other parties". Rule 48, Texas Rules of Appellate Procedure.

Rule 47 of the Texas Rules of Appellate Procedure defines those conditions that must be placed on a surety bond "for the protection of other parties". Specifically, Rule 47(a) provides that the bond must be "payable to the judgment creditor in the amount provided below, conditioned that the judgment debtor shall prosecute his appeal or writ of error with effect and, in the case the judgment of the Supreme Court or court of appeals shall be against him, he shall perform his judgment, sentence or decree and pay all such damages and costs as the court may award against him". Rule 47(a), Texas Rules of Appellate Procedure. That rule goes on to state that "the trial court may make such orders as will adequately protect the judgment creditor against any loss or damage occasioned by the appeal". Id.

Dixon has possession, custody and control of the Cash Deposit pursuant to the Texas Rules of Appellate Procedure, and it is those rules which define the rights of the parties. The intent of the rules is clear. The beneficiary of the bond, or in this case the Cash Deposit, is the party in whose favor the judgment of the trial court rests. Here that is the Defendant. The Cash Deposit was clearly placed with Mr. Dixon for the benefit of and to adequately protect the Defendant. If the appeal is unsuccessful, the Cash Deposit is there to pay the judgment creditor all lawful sums due under the judgment. If the appeal is successful, the Debtor gets his money back.

Plaintiff contends that the Defendant's interest in the Cash Deposit cannot be any greater than if an actual bond had been posted by a corporate surety. This is not necessarily true; and, even if it is true, it does not alter the result. Rule 48 only requires the deposit to be conditioned in the same manner that is required for a surety bond; and this one is. The practical effect of cash, however, is that it is much more beneficial to the judgment creditor as cash in the hands of a third party readily available to be turned over is a much superior

position than being a beneficiary under a bond posted by corporate surety which, at best, may be only another lawsuit.

The cases cited by Plaintiff in support of its contention do not apply to this situation and are not persuasive. *State v. Watts, et al.,* 197 S.W.2d 197 (Tex.App. Austin, 1946, writ ref'd.), *Davis v. State,* 321 S.W.2d 636 (Tex.App. El Paso, 1959, writ ref'd. n.r.e.), and *Los Campeones v. Valley International Properties, Inc.,* 591 S.W.2d 312 (Tex.App. Corpus Christi, 1979, no writ history) all dealt with the situation where the supersedeas bond or cash deposit was placed with the registry of the court to supersede a judgment which did not involve a monetary award to either party. *State v. Watts* and *Davis v. State* dealt with bonds and the courts concluded that under the facts of those cases the party who obtained the judgment in the trial court could not recover against the bond since they suffered no loss. They did not rule that the judgment holder did not have an interest in the bond, only that they could prove no loss. Further, the court of appeals in *State v. Watts* stated:

"Where the judgment is for a specific amount, then the judgment itself, together with court costs, *constitute conclusive proof of the extent of such damage,* and the Court of Civil Appeals can and should render judgment on said bond."

*State v. Watts,* at p. 199. That is exactly our situation. The Cash Deposit, like a supersedeas bond, is intended to indemnify the judgment holder against loss from delay. *Id.* at 199. And here, the judgment itself being a money judgment is conclusive proof of the damage.

"The sole purpose of requiring an appeal or supersedeas bond must therefore necessarily be to furnish security to the appellee in addition to the personal responsibility of the appellant." *Universal Automobile Insurance Co. v. Culberson,* 51 S.W.2d 1071, 1072 (Tex.Civ.App.—Waco 1932, n.w.h.). Sureties "act as indemnity, in addition to the personal liability of the appellant to the appellee for the performance of the judgment rendered." *Mea v. Mea,* 464 S.W.2d 201, 208 (Tex.Civ.App.—Tyler 1971, no

writ). The same applies when cash in lieu of a bond has been posted. *Robertson v. Land,* 519 S.W.2d 227 (Tex.Civ.App.—Tyler 1975, no writ).

Under the circumstances, and with due regard to the intent behind Rules 47 and 48 of the Texas Rules of Appellate Procedure, this type of transaction can logically only be interpreted as "securing" the Defendant's judgment and insuring its ultimate payment should it be upheld upon appeal. Effectively, these rules grant to the judgment creditor a security interest in the bond or cash deposit. That security interest is perfected by the control and possession of the Cash Deposit by the district clerk subject to the order of the trial court. This is totally consistent with Art. 9.305 of the Texas Business and Commerce Code which allows perfection of a security interest in money by possession of the secured party or a bailee (here Dixon) with knowledge of the security interest.

Accordingly, the Cash Deposit was impressed as of the date of the institution of this case with a lien perfected in favor of the Defendant by reason of the provisions of Rules 47 and 48 of the Texas Rules of Appellate Procedure, the voluntary placing of the Cash Deposit with Dixon by the Plaintiff, and the custody and control of the Cash Deposit by the district clerk in accordance with the rules and subject to the order of the state court.

■ Did a fraudulent conveyance occur when the Cash Deposit was placed with Dixon to secure the judgment? No. The securing of an obligation within one year of the petition date is not a fraudulent transfer under 11 U.S.C. § 548. 11 U.S.C. § 548(d)(2)(A), *In re Hooton,* 48 B.R. 575 (Bankr.N.D.Ala.1985), *In re Richards,* 58 B.R. 233 (Bankr.Minn.1986).

■ Also, we are not dealing with a statutory lien. Statutory liens are liens "arising *solely* by force of a statute or specified circumstances or conditions, or lien for distress of rent, whether or not statutory, but does not include security interest or judicial lien, whether or not such interest or lien is provided by or is dependent on a statute and whether or not such interest or lien is made fully effective by statute;" (emphasis added). 11 U.S.C. § 101(47). "A statutory lien is only one that arises automatically, and is not based on an agreement to give a lien or a judicial action." S.Rep. No. 989, 95th Cong., 2d Sess. 27 (1978); H.R.Rep. No. 595, 95th Cong., 1st Sess. 314 (1977), U.S.Code Cong. & Admin.News 1978, pp. 5813, 6271.

■ Further, even though not affected by § 545, we are not dealing with a purely judicial lien. Even though it secures a judgment, this lien was not obtained solely "by judgment, levy, sequestration, or other legal or equitable process or proceeding." 11 U.S.C. § 101(32). It was created solely by the voluntary act of the Plaintiff taken in accordance with rights afforded him under the Texas Rules of Appellate Procedure. It is, therefore, a consensual lien. It is the same as if he had executed a security agreement and voluntarily pledged a certificate of deposit to secure Defendant's debt. The mere fact that the security device here is provided by the Texas Rules of Appellate Procedure as opposed to rising under Article Nine of the Texas Business Code does not make the lien a statutory lien avoidable under § 545 of the Code. But for Vescovo's voluntary action, no lien on the Cash Deposit would exist, as the Cash Deposit would not exist. Therefore, 11 U.S.C. § 545 does not apply.

■ So, even though Dixon may be a custodian under § 101(10)(C) subject to § 543 or an entity, such as a bailee, subject to § 542, the question remains, "Should he be compelled to turn over the Cash Deposit?" Since any turnover will be subject to Defendant's lien, the Cash Deposit is effectively cash collateral. 11 U.S.C. § 363(a). Therefore, in order to use the Cash Deposit the Plaintiff will have to adequately protect the Defendant's lien. Plaintiff has conceded that he cannot do this. And, the Defendant does not consent to its use by Plaintiff. Therefore, the only effect of turning the funds over to the possession of the debtor-in-possession is to change the party holding them from Dixon to the debtor-in-possession. Is this required? They

**474**

are safe where they are. The Cash Deposit is subject to the control of the state court. Even though property of this estate, it remains safe in the hands of Dixon until an order from a court of competent jurisdiction tells Dixon what he is to do with it. And, since the Texas Supreme Court has denied Vescovo's Application for Writ of Error, that time is upon us.

28 U.S.C. § 1334(d) places exclusive jurisdiction of the property of the estate in this Court. Therefore, the disposition of the Cash Deposit should be made by this Court. As Defendant has a valid lien against the Cash Deposit, the disbursement must be first to Defendant in accordance with the amount lawfully due under the judgment (its secured claim), with the remainder, if any, to the debtor-in-possession.

Judgment should be entered for the Defendant First State Bank. However, the record is not sufficient to establish the proper amount to be paid Defendant under its now final judgment at the time the Cash Deposit becomes available for use. Therefore, the Court will set a hearing for the taking of such evidence from the parties as is required for the entry of judgment in accordance herewith.